## FIREARMS

### CONSTITUTIONAL LAW — SECOND AMENDMENT DOES NOT APPLY TO STATE LEGISLATION — ARTICLE 28 OF DECLARATION OF RIGHTS DOES NOT BAR GUN CONTROL LEGISLATION

February 25, 1994

*The Honorable Joel Chasnoff*
*House of Delegates*

You have requested our opinion whether House Bill 1283, the "Maryland Comprehensive Gun Control Act," is constitutional. For the reasons stated below, we conclude that it is.

## I

### House Bill 1283

As its short title suggests, House Bill 1283 would establish a comprehensive regulatory regime for the sale, transfer, and possession of firearms. Among its most significant provisions, House Bill 1283 would establish a rigorous licensing process as a prerequisite to a person's purchasing or receiving a handgun. The bill, with certain exceptions, would prohibit the purchase or receipt of more than two handguns within a single calendar year and the possession of more than 10 handguns or more than 1,000 rounds of handgun ammunition. The bill also would generally prohibit the manufacture, transfer, sale, purchase, or receipt of a "semiautomatic assault weapon," as defined in the bill or as subsequently determined by the Superintendent of State Police. The bill, if enacted, would take effect January 1, 1995.

House Bill 1283 would unquestionably prevent some individuals from obtaining firearms that they may lawfully obtain under current law. The only significant issue of facial constitutionality is whether the bill violates the Second Amendment

to the United States Constitution or Article 28 of the Maryland Declaration of Rights.[1]  We conclude that it does not.[2]

## II

### The Second Amendment

The Second Amendment to the United States Constitution provides as follows:  "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  A threshold question about the Second Amendment is whether it is applicable to the states.  Because it is not, the Second Amendment is irrelevant to House Bill 1283.

Supreme Court precedent going back a century establishes that the Second Amendment itself is applicable only to the federal government, not to the states.  *Miller v. Texas*, 153 U.S. 535, 536 (1894); *Presser v. Illinois*, 116 U.S. 252, 264 (1886); *United States v. Cruikshank*, 92 U.S. 542, 553 (1876).  As the Supreme Court put it in *Cruikshank*:  "The Second Amendment declares that [the right to bear arms] shall not be infringed; but this ... means no more than that it shall not be infringed by Congress.  This is one of the amendments that has no other effect than to restrict the powers of the National Government ...."  *Id.*

---

[1] The bill contains detailed lists to implement its provisions prohibiting trafficking in "semiautomatic assault weapons."  That is, at page 16, lines 6-31, the bill itemizes certain firearms that are specifically defined as "semiautomatic assault weapons."  Section 2 of the bill, on the other hand, contains a very lengthy itemization of firearms that are to be excluded by law from the definition of "semiautomatic assault weapon."  We have no basis to think that these classifications are in any respect irrational; therefore, they do not appear to violate the Equal Protection Clause of the Fourteenth Amendment or Article 24 of the Maryland Declaration of Rights.

[2] This opinion affirms an analysis of these constitutional provisions in a letter of advice from Assistant Attorney General Robert A. Zarnoch to Delegate George W. Owings, III (January 14, 1994).

Nor has the Second Amendment been made applicable to the states through incorporation into the "liberty" component of the Fourteenth Amendment. The Supreme Court has never held that the right guaranteed by the Second Amendment is "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325 (1937), or "fundamental to the American scheme of justice," *Duncan v. Louisiana*, 391 U.S. 145, 148-49 (1968), which have been the touchstones for incorporation into the Fourteenth Amendment. *See generally* Ronald D. Rotunda & John E. Nowak, 2 *Treatise on Constitutional Law* §15.6 (2d ed. 1992); Laurence H. Tribe, *American Constitutional Law* §11-2 (2d ed. 1988).

To the contrary, the case law finds no basis on which to suppose that the earlier Supreme Court decisions are no longer controlling: "Until such time as *Cruikshank* and *Presser* are overturned, the Second Amendment limits only federal action ...." *Fresno Rifle and Pistol Club, Inc. v. Van de Kamp*, 965 F.2d 723, 731 (9th Cir. 1992). *Accord, Quilici v. Village of Morton Grove*, 695 F.2d 261, 270 (7th Cir. 1982); *State v. Goodno*, 511 A.2d 456 (Me. 1986); *State v. Friel*, 508 A.2d 123, 125 (Me.), *cert. denied*, 479 U.S. 843 (1986); *City of East Cleveland v. Scales*, 10 Ohio. App. 2d 25, 460 N.E.2d 1126, 1127 (1983). To summarize, "the Second Amendment has consistently been held to constitute a limitation upon the power of the federal government vis a vis the states, not a limitation upon the states vis a vis their own citizens." *Krisko v. Oswald*, 655 F. Supp. 147, 149 (E.D. Pa. 1987).

This conclusion is supported by a Maryland appellate decision as well as the uniform out-of-state case law. In *Onderdonk v. Handgun Permit Review Board*, 44 Md. App. 132 (1979), the Court of Special Appeals rejected a Second Amendment challenge to the current handgun permit scheme. The Court held that the Second Amendment was not applicable to the states. 44 Md. App. at 135.

## III

### Article 28 of the Declaration of Rights

The Maryland Constitution conspicuously omits the Second Amendment's reference to the "right to keep and bear arms." Rather, Article 28 of the Declaration of Rights refers solely to the

militia: "That a well regulated militia is the proper and natural defense of a free Government." This provision, which dates back to the Constitution of 1776, has not been construed in any reported decision.

Given the omission of any language referring to a right to bear arms, Article 28 surely has a scope no greater than that of the Second Amendment. Indeed, Article 28 would likely be construed by the courts more narrowly, as nothing more than a directive to the General Assembly to provide for a militia. For purposes of this analysis, however, we shall assume that Article 28 has a scope equal to that of the Second Amendment and that it would, therefore, prohibit any legislative enactment proscribed by the Second Amendment, if the latter were applicable to the State. *See* Alfred S. Niles, *Maryland Constitutional Law* 50-51 (1915).

Despite occasional scholarly demurrers,[3] "cases have analyzed the Second Amendment purely in terms of protecting state militias, rather than individual rights." *United States v. Nelson*, 859 F.2d 1318, 1320 (8th Cir. 1988). As the Supreme Court explained in *United States v. Miller*, 307 U.S. 174 (1939), the purpose of the Second Amendment was to "assure the continuation and render possible the effectiveness of [state militia] forces ...." 307 U.S. at 178. In this way, state militias would be ready to respond to threats to the nation, and, consequently, a large standing federal army would not be necessary. *Accord, Lewis v. United States*, 445 U.S. 55, 65 n.8 (1980). *See also Quilici v. Village of Morton Grove,* 695 F.2d at 270; *United States v. Kozerski*, 518 F. Supp. 1082 (D.N.H. 1981),

---

[3] *See, e.g.*, Sanford Levinson, *The Embarrassing Second Amendment*, 99 Yale L.J. 637 (1989); Nelson Lund, *The Second Amendment, Political Liberty, and the Right to Self-Preservation*, 39 Ala. L. Rev. 103 (1987).

*aff'd*, 740 F.2d 952 (1st Cir.), *cert. denied*, 469 U.S. 842 (1984); *City of East Cleveland v. Scales*, 460 N.E.2d at 1127.[4]

In Maryland, the militia is "well regulated" by Article 65 of the Code. As part of this regulatory scheme, arms needed for the militia are to be "deposited in the armory ...." Article 65, §29. The General Assembly thus has made the manifestly reasonable judgment that the needs of the militia can be met with State-owned firearms housed in secure locations.

No tenable argument can be made that the needs of the State militia can only be met by affording private citizens access to the kinds of firearms that would be restricted under House Bill 1283.[5] What one court said of the Second Amendment is surely true of Article 28: "The right guaranteed ... is a collective right to bear arms rather than an individual right, and has application only to the right of the state to maintain a militia and not to the individual's right to bear arms." *United States v. Kozerski*, 518 F. Supp. at 1090.

---

[4] It has been argued that a passage in *United States v. Verdugo-Urdiquez*, 494 U.S. 259 (1990), suggests that the Second Amendment does indeed afford rights to individuals. In the course of its holding that the Fourth Amendment did not apply to a search by American authorities of a foreign national on foreign soil, the Supreme Court wrote that "'the people' protected by the Fourth Amendment, and by the First and Second Amendments, ... refers to a class of persons who are part of a national community ...," rather than aliens. 494 U.S. at 265-66. This passing comment about the Second Amendment in a wholly different context does not overrule *United States v. Miller*; does not vitiate the point that the rights afforded to "the people" are inextricably linked to their participation in a "well regulated militia"; and is irrelevant to Article 28, which omits any reference at all to "the right of the people."

[5] To be sure, the militia comprises "[a]ll able-bodied citizens of the State ...," with numerous exceptions. Article 65, §1. *See also Perpich v. Department of Defense*, 110 S.Ct. 2418, 2429 n.25 (1990) (suggesting in dicta that the unorganized militia of a state is subject to call under federal law). But nothing in Article 28 of the Declaration of Rights or Article 65 of the Code suggests that Maryland citizens have a right to own handguns or semiautomatic assault weapons while awaiting the exceedingly remote contingency of a call to active service.

## IV

## Conclusion

In summary, it is our opinion that House Bill 1283 is constitutional.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions and Advice*

***Editor's Note:***

In *Love v. Pepersack,* 47 F.3d 120, 124 (4th Cir. 1995), the Fourth Circuit reaffirmed the precedent that "The Second Amendment does not apply to the states."